AO 91 (Rev. 11/11) Criminal Complaint (modified by USAO for telephone or other reliable electronic means)

# UNITED STATES DISTRICT COURT
for the
Southern District of Ohio

| | |
|---|---|
| United States of America<br>v.<br><br>MICHAELA SAMUEL<br><br>*Defendant(s)* | )<br>)<br>) Case No. 2:20-MJ-579<br>)<br>)<br>)<br>) |

## CRIMINAL COMPLAINT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.
On or about the date(s) of July 21, 2020 thru August 3, 2020 in the county of Franklin in the Southern District of Ohio, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. §§ 846, 841(a)(1) and (b)(1)(A)(v) | Conspiracy to knowingly and intentionally distribute 10 grams or more of a mixture or substance containing a detectable amount of Lysergic Acid Diethylamide (LSD), a Schedule I controlled substance. |

This criminal complaint is based on these facts:

SEE ATTACHED AFFIDAVIT

☑ Continued on the attached sheet.

_____
*Complainant's signature*

Brian Daron, DEA Task Force Officer
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by _____ *(specify reliable electronic means)*.

Date: 8/24/2020

_____
*Judge's signature*

City and state: COLUMBUS, OHIO

Elizabeth Preston Deavers, U.S. Magistrate Judge
*Printed name and title*

## AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

I, Brian Daron, (hereinafter referred to as the Affiant) being duly sworn, depose and state:

1. Your Affiant is a sworn Task Force Officer with the United States Drug Enforcement Administration (DEA), Columbus District Office. Your Affiant is an investigative or law enforcement officer of the United States within the meaning of Section 2510 (7) of Title 18, United States Code, in that your Affiant is empowered by law to conduct investigations of and to make arrests for offenses enumerated in Section 2516 of Title 18, United States Code.

2. Prior to being assigned to the DEA Task Force, Your Affiant has been a Task Force Officer with DEA since November of 2016. Your Affiant is currently assigned to the Columbus District Office, where your Affiant has been involved with narcotics investigations. Your Affiant is also a sworn police officer with the Upper Arlington Police Department (UAPD) (Ohio) and has been so for the last 18 years. For the last 5 years your Affiant has been assigned as a detective for UAPD. Your Affiant has participated and conducted numerous investigations of violations of various State and Federal criminal laws, including the unlawful possession with intent to distribute controlled substances, the distribution of controlled substances and conspiracy to possess with the intent to distribute and distribute controlled substances, in violation of state and federal law. These investigations have resulted in arrests of individuals who have possessed with the intent to distribute and distributed heroin, cocaine and other controlled substances. These various investigations have also resulted in seizures of illegal drugs and proceeds from the distribution of those illegal drugs.

3. This affidavit is being submitted in support of an application for criminal complaints against **Michaela SAMUEL** for conspiring to knowingly and intentionally distribute 10 grams or more of a mixture or substance containing a detectable amount of Lysergic Acid Diethylamide (LSD), a Schedule I controlled substance, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A)(v), all in violation of 21 U.S.C. § 846.

4. The facts set forth within this affidavit come from the Affiant's own personal involvement with the investigation, as well as information provided by other law enforcement sources, officers, confidential sources, and reports, and this affidavit does not contain an exhaustive listing of each and every currently known fact concerning the investigation. The information outlined below does not contain all details or all facts of which I am aware relating to this investigation but rather is provided for the limited purpose of establishing probable cause that **Michaela SAMUEL and Sage FIGUEROA** committed this offense.

## FACTS SUPPORTING PROBABLE CAUSE

5. In July 2020, your Affiant and another investigator with the Drug Enforcement Administration (DEA) Columbus District Office (CDO) met with an Upper Arlington Police Department Confidential Source hereinafter referred to as CS. The CS is cooperating and providing information for consideration on a pending criminal matter. While meeting with

the CS, your Affiant obtained information pertaining to an individual known to the CS as "Kay Kay". According to the CS, "KayKay" is involved in trafficking drugs including Alprazolam (Xanax), LSD, Marijuana and MDMA (Molly). Following this meeting, law enforcement identified **Michaela SAMUEL** as the individual known by the CS as "Kay Kay." At the request of law enforcement, the CS made arrangements for an undercover officer to purchase drugs from Kay Kay (SAMUEL).

6. On July 21, 2020, a DEA Task Force Officer acting in an undercover capacity (hereinafter UC) conducted two narcotics transactions with **SAMUEL** who was the front seat passenger of a KIA Forte registered to and being operated by **Sage FIGUEROA**. During the initial narcotics transaction, the UC purchased a total of one-hundred tablets scored and purported as 2 milligram Alprazolam (Xanax) tablets for the sum of five-hundred dollars ($500.00) from **SAMUEL**. Following the initial narcotics transaction with **SAMUEL**, the UC requested an additional fifty (50) tablets scored and purported to be 2 milligram Alprazolam (Xanax) from **SAMUEL**. Following this request, **SAMUEL** agreed and eventually returned to the meeting location with **FIGUEROA** with the additional fifty (50) tablets scored and purported to be 2 milligram Alprazolam (Xanax). Upon **SAMUEL** and **FIGUEROA**'s return, the UC observed **FIGUEROA** provide **SAMUEL** with a clear plastic bag which **SAMUEL** then provided to the UC. The bag contained fifty (50) tablets scored and purported to be 2 milligram Alprazolam (Xanax) in exchange for two-hundred and fifty dollars ($250.00) from the undercover officer. Alprazolam is a Schedule IV controlled substance.

7. On or about July 25, 2020, the UC communicated with **SAMUEL** using telephone number 614- 625-6403. The following depicts, in substance, the conversation with **SAMUEL** and is not verbatim. During the conversation, the UC inquired about obtaining vials of liquid Lysergic Acid Diethylamide (LSD) from **SAMUEL**. During the conversation, the UC and **SAMUEL** agreed to complete a future narcotics transaction for fifteen vials of LSD at the price point of two-hundred and seventy-five dollars ($275.00) per vial of LSD. **SAMUEL** informed the UC that she would contact an individual (believed to be her source of supply) for the fifteen (15) vials of liquid LSD.

8. On August 3, 2020, the UC contacted **SAMUEL** and arranged to purchase the fifteen (15) vials of liquid LSD for the sum of four-thousand one-hundred and twenty-five dollars ($4,125.00). While engaging in telephonic communication with **SAMUEL**, the UC was sent a text message from **SAMUEL**'s telephone number stating "I feel u I got u just make sure u come thru and my bf will b with me with the strap jus bc he is nervous with me serving that much." Your Affiant knows, through training and experience the term "strap" is a street and/or slang term used for a firearm. This message was sent by **SAMUEL** upon her attempting to obtain money from the UC prior to the arranged narcotics transaction. Due to the text message provided by **SAMUEL**, the UC believed that **SAMUEL**'s boyfriend, identified as **Sage FIGUEROA**, would have been present during the pre-arranged narcotics transaction with a firearm acting as a form of protection and/or security during the transaction. Your Affiant knows, through training and experience, the abbreviation "bf" is used to abbreviated titles to include but not limited to "boyfriend."

2

9. Continuing on the same date, at approximately 3:37 p.m., **SAMUEL** instructed the UC to meet at the Motel 6 located at 5930 Scarborough Boulevard in Columbus, Ohio in order to complete the prearranged narcotics transaction for the fifteen (15) vials of liquid LSD. Once this request was made, members of DEA Columbus District Office (CDO) followed **SAMUEL** and **FIGUEROA** to the Motel 6. Upon their arrival, members of DEA CDO identified **SAMUEL** and **FIGUEROA** accessing room "248" located within the Motel 6 property.

10. Shortly after **SAMUEL** and **FIGUEROA**'s arrival, the UC conducted an audio recorded telephone call with **SAMUEL** which eventually turned into a "FaceTime" video call. The video was unable to be recorded but, the UC was able to record the audio portion of the conversation. The following depicts, in substance, the telephone call between **SAMUEL** and the UC and is not verbatim. During the FaceTime video call, the UC immediately observed multiple brown bottles in a square clear plastic bag on a bed. In addition to these bottles, the UC observed a couple of the bottles outside of the clear plastic bag on the bed. Upon making this observation, **SAMUEL** stated "look, I'm literally waiting on you." At this time, the UC informed **SAMUEL** he did not want to meet at the Motel 6 to complete the transaction. **SAMUEL** eventually informed the UC she wasn't going to sell (the 15 vials of LSD) to the UC because he was declining to come to the Motel 6 to complete the transaction.

11. Shortly after the termination of the video call and the termination of the pre-arranged narcotics transaction between **SAMUEL** and the UC, members of DEA CDO observed an individual, later identified during a traffic stop and hereinafter referred to in this Affidavit as Cooperating Defendant (CD), exit room 248 with **SAMUEL** and **FIGUEROA**. Upon making this observation, CD eventually entered a silver Hyundai and left the Motel 6. Members of DEA CDO established moving surveillance on CD and his vehicle.

12. Continuing on the same date, at approximately 5:30 p.m., Columbus Division of Police Officers, while operating a marked cruiser, conducted a traffic stop on CD's vehicle on Parsons Avenue near Elsmere Street in Columbus, Ohio for a traffic violation. During the traffic stop, K9 Officer Jones and his K9 partner "Ayko" arrived on scene and conducted a free air sniff around the exterior of CD's vehicle. During the free air sniff) Ayko indicated a positive alert to the odor of narcotics emitting from CD's vehicle resulting in a probable cause search of the vehicle. Officers located sixteen (16) brown bottles containing a liquid substance which was confirmed to be LSD in an amount weighing 42.42 grams. Upon the discovery of the liquid LSD vials in CD's possession, undercover law enforcement recognized the vials and clear plastic bag to appear to be the same packaging and brown vials that were depicted in the FaceTime video call with **SAMUEL**.

13. Following this discovery, DEA officers conducted a recorded on scene interview with CD. Prior to any questions CD was verbally provided his Miranda Rights which he acknowledged he understood and agreed to speak with law enforcement. The following depicts, in substance, the interview with CD and is not verbatim. During the interview, CD admitted he was in possession of the vials which contained a substance he believed was LSD. CD confirmed he was present during the FaceTime call between **SAMUEL** and the

3

individual (the UC) to whom **SAMUEL** was showing the vials of LSD. According to CD he left the Motel 6 where **SAMUEL** and **FIGUEROA** were located due to the transaction not taking place. CD informed law enforcement he was taking the vials back to the individual he obtained them from. CD admitted he expected to profit three-hundred dollars ($300.00) which have been provided to him by **SAMUEL** for supplying the fifteen (15) vials of LSD.

14. Once the interview of CD was concluded, members of DEA CDO, who were located at the Motel 6, approached **SAMUEL** and **FIGUEROA** and took them into custody for active felony arrest warrants through the State of Ohio. Upon **SAMUEL** and **FIGUEROA** being taken into custody, law enforcement sought a search warrant for room 248 of the Motel 6 (5930 Scarborough Boulevard, Columbus, Ohio). Upon the search warrant being authorized, law enforcement conducted a search of the room and discovered items to include United States currency totaling approximately thirteen-thousand, five-hundred and fifty-seven dollars ($13,557.00), multiple drugs to include but not limited to 10.88 grams of liquid LSD which was contained in four brown vials located on the nightstand between the two beds inside the hotel room. The four (4) bottles look identical to the bottles seized during the traffic stop involving CD prior to the execution of the search warrant.

15. On August 4, 2020, law enforcement conducted an audio recorded custodial interview with **FIGUEROA** at Franklin County Corrections Center II located at 2460 Jackson Pike in Columbus, Ohio. Prior to any questioning, TFO Smith verbally provided **FIGUEROA** his Miranda Rights which he stated he understood and agreed to speak with law enforcement. The following depicts, in substance, the interview of **FIGUEROA** and is not verbatim. During interview, **FIGUEROA** admitted to trafficking in marijuana and helping 'his girl" (**SAMUEL**). **FIGUEROA** informed investigators he acts as "protection" for **SAMUEL** in regards to when **SAMUEL** is completing narcotics transactions. Specifically, **FIGUEROA** informed investigators he will be present when **SAMUEL** is completing larger narcotics transactions to ensure she's "okay" and doesn't get "robbed." **FIGUEROA** also admitted to having knowledge of the transaction involving **SAMUEL** and undercover law enforcement involving the liquid vials of LSD.

16. On August 13, 2020, CD provided consent for law enforcement to search his cellular phone which was obtained during the traffic stop on August 3, 2020. Upon searching CD's cellular phone, law enforcement located a Facebook Messenger conversation between **SAMUEL**, using account name "Michaela Smith" and CD. Upon reviewing the profile photograph under the Facebook account "Michaela Smith", law enforcement recognized the individual solely captured in the profile photograph to be **SAMUEL**. CD informed investigators that **SAMUEL** uses the Facebook account "Michaela Smith." The following depicts, in substance, the conversational exchange between **SAMUEL** and CD and is not verbatim.

17. On August 3, 2020 at approximately 12:46 p.m., **SAMUEL** sent message to CD stating "My guy needed 15 vials today by noon." Following this message, **SAMUEL** sent an additional message at approximately 1:41 p.m., stating "I need 15 vials." Shortly after this message was received CD replied to **SAMUEL** stating "I'm heading to my buddies place now to see if hes done anything with it yet." **SAMUEL** informed CD "Ok idk if I need 15 still he needed them at noon but I'll take 2-3 forsure." Your Affiant knows, through speaking with the

undercover law enforcement investigator that the context of this conversation is consistent with the conversational exchange between **SAMUEL** and the undercover law enforcement investigator in regards to the fifteen vials of LSD. Due to the context of the conversations between **SAMUEL** and undercover law enforcement as well as **SAMUEL** and CD, Your Affiant believes **SAMUEL** was referencing the narcotics transaction between the UC and **SAMUEL** while speaking with CD. This belief is further substantiated when **SAMUEL** informed CD that "he said he would like to by 15 grams on the Chrystal if you would be able to bc he likes to do it himself." Your Affiant knows, through conversation with the UC that he (the UC) inquired about purchasing 15 grams of the crystal form of LSD during conversation with **SAMUEL** on August 3, 2020.

18. At approximately 3:27 p.m., CD sent a message to **SAMUEL** stating "We'er laying it now. 15?" At approximately 3:47 p.m., **SAMUEL** provided CD with the address to Motel 6 located at 5930 Scarborough Boulevard in Columbus, Ohio. At approximately 4:03 p.m., **SAMUEL** sent a message to CD stating "Otw?" CD replied "Yes, address." **SAMUEL** provided the address again to the Motel 6. Your Affiant knows, through training and experience, the abbreviation "Otw" is commonly used to abbreviate "on the way." Following this message exchange, law enforcement observed a message from **SAMUEL** stating "So sorry man." CD replied "Lol your fine, it's not on you." **SAMUEL** informed CD "Ya I hate people tho bc then it fucks ur stuff up \: I just hate that. U do to much for me \: it won't happen again tho 100." Your Affiant knows, based on investigation that these messages were sent to CD from **SAMUEL** once CD was observed by members of DEA CDO leaving the Motel 6. Your Affiant believes, due to the contextual totality of the conversation, **SAMUEL** was apologizing for the narcotics transaction not taking place for the fifteen vials of LSD.

19. The suspected LSD from the traffic stop involving CD was sent to the Columbus Division of Police Crime Laboratory and was found to contain 42.42 grams of liquid Lysergic Acid Diethylamide (LSD), a Schedule 1 controlled substance.

//

//

//

//

//

//

//

//

20. Based upon this information, your Affiant believes probable cause exists that beginning on July 21, 2020, and continuing up to and including August 3, 2020, in the Southern District of Ohio, **Michaela SAMUEL** and **Sage FIGUEROA** conspired with each other to knowingly and intentionally distribute 10 grams or more of a mixture or substance containing a detectable amount of Lysergic Acid Diethylamide (LSD), a Schedule I controlled substance, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A)(v), all in violation of 21 U.S.C. § 846.

_____
Brian Daron
Task Force Officer
Drug Enforcement Administration

Sworn before me and subscribed in my presence on this 24th day of August, 2020, in Columbus, Ohio.

_____
ELIZABETH A. PRESTON DEAVERS
CHIEF, UNITED STATES MAGISTRATE JUDGE